IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPCOM CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> 89WARD, et al., <br><br> Defendants. | Case No. 25-cv-09860 <br><br> **Judge Mary M. Rowland** <br><br> **Magistrate Judge Young B. Kim** |

**PLAINTIFF'S MOTION TO COMPEL AND STAY**

Plaintiff Capcom Co., Ltd. ("Plaintiff' or "CAPCOM") moves this Honorable Court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Defendant OUKU (Def. No. 94) ("Defendant") to respond to CAPCOM's outstanding discovery requests and stay the briefing schedule in Minute Entry [59][1] until Defendant fully responds and produces supplemental documents responsive to CAPCOM's discovery requests.

**BACKGROUND AND LOCAL RULE 37.2 CERTIFICATION**

Defendant operates an e-commerce store at www.ouku.com (Defendant's "Online Marketplace"), where it advertised, offered for sale, and sold an unauthorized products using counterfeits of CAPCOM's federally registered trademarks (the "Capcom Trademarks") (collectively, Defendant's "Counterfeit Products"). Declaration of Martin F. Trainor (the "Trainor Decl."), ¶ 2.

CAPCOM filed this action on August 18, 2025 [1] and subsequently moved for entry of a temporary restraining order ("TRO") [12]. The Court entered a TRO [19] that, among other things,

---

[1] In its Unopposed Motion for Extension of Time, Defendant specifically requested that the TRO be extended as to Defendant until briefing on CAPCOM's Motion for Entry of a Preliminary Injunction is completed. *See* [61], 2.

1

enjoined Defendant from further infringing the Capcom Trademarks and permitted CAPCOM to issue expedited discovery via e-mail, with Defendant's responses due within three business days.[2] [19] ¶¶ 1, 7. The TRO also ordered PayPal to provide expedited discovery regarding Defendant's contact information and sales, and to restrain any of Defendant's financial accounts. *Id.* ¶ 5. Pursuant to the TRO, PayPal identified and restrained Defendant's financial accounts '1630570605488149625 and '1443426835958058207 (the "Financial Accounts"), associated with the e-mail addresses paypal@eechic.com and paypal@wehobi.com, respectively. Trainor Decl., ¶ 3. According to the limited information provided by PayPal, there is $66,857.13 restrained in Defendant's Financial Accounts. *Id.* PayPal further provided transaction logs for account '1630570605488149625, but the information provided contained no information that could be used to determine Defendant's Counterfeit Product sales. *Id.*

On September 18, 2025, CAPCOM served its First Set of Interrogatories ("Interrogatories"), First Set of Requests for Admissions ("RFAs"), and First Set of Requests for Production ("RFPs") (collectively, "CAPCOM's Discovery Requests") on Defendant. *Id.* ¶ 4. Defendant failed to respond to CAPCOM's Discovery Requests by the three-business day deadline. *Id. See* [19] ¶ 7. On October 14, 2025, Defendant filed an Opposition to CAPCOM's Motion for a Preliminary Injunction (the "Opposition"). [51]. That same day, Defendant served CAPCOM with its responses to CAPCOM's Discovery Requests, along with limited production. Trainor Decl., ¶ 4. Defendant's responses and productions were deficient and its responses to the Interrogatories are unverified.[3] *Id.*

---

[2] The TRO [19] was subsequently converted to a Preliminary Injunction. [60].
[3] Notably, the Declaration of Xiaoyi Shen in support of the Opposition [51-1] includes all but one of the documents Defendant produced in response to CAPCOM's Discovery Requests.

2

On October 15, 2025, CAPCOM informed Defendant of the discovery deficiencies in writing and requested to schedule a Local Rule 37.2 meet and confer conference. Trainor Decl., ¶ 5. On October 22, Defendant supplemented its global Counterfeit Product sales, but failed to address all outstanding discovery deficiencies, including providing a full accounting of Defendant's sales. *Id.* As such, the parties held a Local Rule 37.2 meet and confer videoconference on October 22, 2025 at 2:30 p.m. CST, where Defendant agreed to provide supplemental production regarding its sales by October 29, 2025. Trainor Decl., ¶ 6. Specifically, Defendant agreed to conduct keyword searches of its sales data using a list of terms provided by CAPCOM and to produce responsive documentation. *Id.*

On October 30, 2025, Defendant produced supplemental documentation demonstrating it performed CAPCOM's requested keyword searches through its Online Marketplace rather than its sales data. Trainor Decl., ¶ 7. Shortly thereafter, the parties held another Local Rule 37.2 meet and confer videoconference to discuss Defendant's continued failure to produce supplemental documents responsive to CAPCOM's Discovery Requests. *Id.* CAPCOM again requested a full sales accounting and explained that keyword searches through Defendant's Online Marketplace are deficient because Defendant had already removed all Counterfeit Products (including infringing products not yet identified by CAPCOM) pursuant to the TRO. *Id. See* [19] ¶ 1. Further, CAPCOM informed Defendant that, due to its upcoming response deadline, CAPCOM will move to compel if a full accounting of Defendant's sales is not produced. *Id.*

As of the time of filing this motion, Defendant has not provided further responses or supplemental production in response to CAPCOM's Discovery Requests. *Id.* CAPCOM certifies that it has attempted, in good faith, to confer with Defendant in an effort to obtain complete responses to its Discovery Requests without court intervention.

**ARGUMENT**

**I.     Legal Standard**

Rule 37 allows a party to compel discovery where the responding party fails to respond to a discovery request or where the party's response is evasive or incomplete. Fed. R. Civ. P. 37(a)(3)-(4). Courts adopt a liberal interpretation of the discovery rules when ruling on a motion to compel. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

"Discovery is a search for the truth." *Shapo v. Engle*, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001). Under the Federal Rules of Civil Procedure, CAPCOM is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(l). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). In other words, "[r]equests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish,* 235 F.R.D. at 450. Courts look unfavorably to significant restrictions placed on discovery. *See id.*

"An interrogatory response generally should be complete in and of itself and stand on its own." *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2020 WL 1701861, at *6 (N.D. Ill. Apr. 8, 2020). An answer to an interrogatory that is incomplete or evasive when made is not an answer, but it is a failure to answer. Fed. R. Civ. P. 37(a)(4). Further, when responding to a request for production, the responding party must produce the requested records—or "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982) ("Parties are required to respond to requests to produce in a complete and accurate fashion."). If objecting to a request, the burden "rests upon the objecting party to show why a particular discovery request is improper."

*Kodish*, 235 F.R.D. at 450; *see also Yessenow v. Hudson*, 270 F.R.D. 422, 427 (N.D. Ind. 2010) ("The objecting party must show with specificity that the request is improper.").

If a responding party maintains a request is overly broad, it must still "produce any responsive documents to which the requesting party is clearly entitled, explain the scope of that production, and then state unequivocally that additional responsive documents are being withheld based on the overbreadth objection." *Midkiff v. Navient Sols., Inc.*, 2021 WL 3810356, at *10 (S.D. Ind. Aug. 26, 2021). "Producing only those documents that are deemed helpful to the producing party's litigation position—parsing out the bad from the good—is, of course, impermissible. A litigant cannot limit its discovery so as to ascribe unto itself the role of judge and jury." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 378 (S.D. Ind. 2009).

Once a party has served its discovery requests, Rule 26(e) imposes an obligation of timely supplementation of discovery responses whenever the party learns that a response is materially incomplete or inaccurate. Fed. R. Civ. P. 26(e)(1)(A); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010). "[The Rule] presumes that proper formal, complete and sworn answers had been previously served." *Villareal*, 266 F.R.D. at 211. A failure to do so is sanctionable. Fed. R. Civ. P. 37(c)(1). Moreover, where a party failed to take reasonable steps to ensure that its original responses were complete and accurate, later supplementation "does not absolve a party where it has failed to produce the material in a timely fashion." *Fautek*, 96 F.R.D. at 145 (citations omitted).

**II.     CAPCOM's Interrogatories and RFPs are Relevant and Properly Tailored**

The majority of Defendant's responses are typical "boilerplate" objections that are "thoughtlessly and reflexively provided as the 'answers' to [CAPCOM's] discovery requests." *Vera Bradley Designs, Inc. v. Aixin Li*, 2021 WL 780718, at *3 (N.D. Ill. Mar. 1, 2021). Defendant repeatedly asserts that each discovery request is overbroad, irrelevant, and exceeds the scope of

expedited discovery authorized by the TRO. Exhibit 2, at 5-9, 16-23, Trainor Decl., ¶ 4. However, "[o]bjections like these are little more than a tactic to obfuscate and delay." *Vera Bradley Designs, Inc.*, 2021 WL 780718, at *3. As demonstrated below, "[Defendant's] objections do not satisfy Fed. R. Civ. P. 34(b)(2)(C)'s requirements and are 'tantamount to not making any objection at all.'" *Gevas v. Dunlop*, 2020 WL 814875, at *3 (N.D. Ill. Feb. 19, 2020).

Contrary to Defendant's objections, the outstanding discovery requests are relevant and properly tailored to the scope of expedited discovery authorized by the TRO. Specifically, Interrogatory Nos. 5, 7-10 and RFP Nos. 1, 3-5, 7-10 are all related to Defendant's identity and location, the nature of Defendant's operation and all associated sales, financial information, methods of payment, and seek an accounting of Defendant's sales and listing history related to Defendant's Online Marketplace. [19] ¶ 6; Exhibit 1 at 3-4, 20-21, Trainor Decl., ¶ 4. As such, Defendant's objections fail given the targeted discovery CAPCOM seeks is Court ordered.

Likewise, the outstanding discovery requests are not overbroad. Defendant's boilerplate objections are improper for failing to explain with specificity how each request is overbroad, which is Defendant's burden. Exhibit 2, at 5-9, 16-23, Trainor Decl., ¶ 4; *see Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006) ("That burden cannot be met by a reflexive invocation of 'the same baseless, often abused litany' that the requested discovery is …'overly broad'…"). Other than a boilerplate objection to the inclusion of the word "all" in RFP Nos. 9 and 10, Defendant's objections do not specifically detail how or why any particular request is overbroad. None of Defendant's objections suggest that responding would involve an excessive volume of documents or that doing so would span an unreasonable amount of time. As such, Defendant's "objections lack any specificity to enable the Court to evaluate their merit." *CSI Worldwide, LLC v. Trumpf, Inc.*, 2022 WL 22974447, at *2 (N.D. Ill. Aug. 9, 2022). Moreover, for

the RFPs that Defendant provided responsive documents to, Defendant failed to "explain the scope of that production, and then state unequivocally that additional responsive documents are being withheld based on the overbreadth objection." *Midkiff*, 2021 WL 3810356, at *10. Defendant impermissibly produced only what it wanted to, not what CAPCOM is entitled to. *Novelty, Inc.*, 265 F.R.D. at 378.

Receiving complete responses to its Discovery Requests will assist CAPCOM in resolving Defendant's challenge to the asset restraint. Interrogatory Nos. 5, 7-10 and RFP Nos. 1, 3-5, 8-10 seek information and/or documentation relevant to a determination of the asset restraint's scope. Exhibit 1 at 3-4, 20-21, Trainor Decl., ¶ 4. These requests aim to uncover the full scope of Defendant's counterfeiting activities and the revenue earned from Defendant's sale of Counterfeit Products (including Counterfeit Products not yet identified by CAPCOM)[4]. *See Deckers Outdoor Corp. v. P'ships, et al.*, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Defendant should not be allowed to claim minimal profits, while refusing to produce the outstanding discovery necessary to substantiate its purported profits. Relatedly, Defendant's record retention policies (RFP No. 7) are relevant to CAPCOM to determine whether spoilation has occurred, relevant documents are being withheld, or additional discovery is needed to properly respond to the Opposition. Exhibit 1 at 20-21, Trainor Decl., ¶ 4; *see Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) ("document retention policies may help [CAPCOM] determine the universe of responsive documents and evaluate any gaps in document production.").

---

[4] As shown in Exhibit 4 to the Trainor Declaration, Defendant offered multiple unique Counterfeit Products for sale on its Online Marketplace.

### III. Defendant Should Be Required to Respond Fully and Supplement its Production to CAPCOM's Discovery Requests

"To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Delta Tech. Dev. LLC v. BIGJOYS*, 2024 WL 3755929, at *6-7 (N.D. Ill. Aug. 12, 2024). Defendant's Opposition challenges the asset restraint, alleging that the profits from its counterfeiting activities are minimal. [51] at 1, 7-8. However, Defendant's incomplete and deficient responses, coupled with its failure to supplement its responses and production, prevents CAPCOM from determining a reliable profit figure to effectively respond to Defendant's Opposition. Accordingly, CAPCOM requests the Court compel Defendant to provide fully responsive information and documentation to CAPCOM's Discovery Requests before CAPCOM responds to Defendant's Opposition.

#### A. Information and Documentation Relating to Defendant's Product Listings, Sales, and Nature of Operations

Defendant failed to provide complete responses and supplement its production to Interrogatory Nos. 3-5, 7-9 and RFP Nos. 2-5, 8, 10 which relate to Defendant's product listings, sales, and nature of Defendant's operations. Exhibit 2 at 4-8, 17-23, Trainor Decl., ¶ 4.

First, Defendant's sales records, which appear to have been independently created for this litigation, are (at best) incomplete and fail to account for all Defendant's counterfeiting activities. Exhibit 3 at 2-3, 5-6, Trainor Decl., ¶¶ 4-5. According to Defendant's productions, Defendant sold forty-seven Counterfeit Products throughout the world, generating $1,444.53. *Id.* Defendant claims only nine of these sales were made in the United States, generating $299.41. *Id.* Alongside these figures, Defendant provided images of five Counterfeit Products with their corresponding SKU numbers.[5] Exhibit 3 at 6, Trainor Decl., ¶ 5. However, CAPCOM's submitted screenshots of

---

[5] A SKU (Stock Keeping Unit) Number through PayPal is a unique internal code, assigned to every product in a seller's inventory, that identifies each product variation. Every brand, product, and specific version of

Defendant's Online Marketplace undermine the trustworthiness of Defendant's production. *See* [15]. Specifically, CAPCOM's screenshot evidence demonstrates that Defendant offered six variations of Counterfeit t-shirts, in sizes ranging from extra-small to triple extra-large. Exhibit 4 at 2, Trainor Decl., ¶ 7; Figure 1. Additionally, CAPCOM's evidence shows Defendant sold nine Counterfeit Products associated with SKU #9236504. *Id. See* Figure 1 below. Despite this, Defendant's production identifies only two sales for SKU #9236504 and includes an entirely different product image corresponding to SKU #9236504. Exhibit 3 at 2-3, 5-6, Trainor Decl., ¶¶ 4-5. Moreover, CAPCOM's search for "Resident Evil" on Defendant's Online Marketplace returned thirty-seven products, nine of which clearly infringe the Capcom Trademarks. Exhibit 4 at 5, Trainor Decl., ¶ 8. Yet, Defendant's production fails to fully account for these nine additional infringing products and fails to include listing images for all infringing products advertised, offered for sale, and sold through Defendant's Online Marketplace.



*Figure 1 – CAPCOM's Submitted Screenshot Evidence*

---

that product across different sizes, colors, and styles should have a unique SKU number. https://www.paypal.com/us/brc/article/what-is-a-sku.

9

Defendant's sales records also fail to provide any product URLs; product listing titles; quantities offered; sizes offered; colors offered; total quantity sold; gross revenue, and any cost deductions. Without this information, Defendant's purported sales and profit figures cannot be relied upon. Defendant should have obtained full transaction records to provide accurate and verifiable sales records. *See Delta Tech. Dev. LLC*, 2024 WL 3755929, at *7 (finding Defendant did not meet its documentary burden of showing its assets were not proceeds of counterfeiting because "[t]he screenshots of Amazon's sales portal lack the information that would allow the Court to determine that those were the only sales [Defendant] made on the platform—[Defendant] should have obtained that evidence … itself."). Further, Defendant failed to produce information and documentation regarding the nature of its operation.

As shown above, Defendant's procedures for detecting its infringing product sales are deficient, as they fail to capture all infringing products advertised, offered for sale, and sold on Defendant's Online Marketplace. In response to Interrogatory No. 4, Defendant stated it "conducted a search using the keyword 'resident evil' and got this information from the data system." Exhibit 2 at 5, Trainor Decl., ¶ 4. Since the Capcom Trademarks were featured on additional infringing products, there is no way to determine whether other transactions involved counterfeit or infringing products absent visual inspection of the products themselves. Defendant's single search also fails to account for infringing products that omit "resident evil" from its product listing title, use misspellings, and/or variations that evade keyword detection. Further, it is unknown whether Defendant had other infringing listings that were no longer active at the time CAPCOM learned of Defendant's infringement. Similarly, Defendant's deficient keyword searches cover only active product listings on its Online Marketplace and omit all infringing and Counterfeit Products removed pursuant to entry of the TRO. Exhibit 3 at 7-60, Trainor Decl., ¶ 7.

It is not unreasonably burdensome for Defendant to perform a search of its sales data and provide information and documentation regarding all products offered for sale on its Online Marketplace for the past five years. *See Volkswagen Group of America, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A", et. al.*, No. 21-cv-04758 (N.D. Ill. July 1, 2022) (unpublished) (Dkt. Nos. 66-67) (Kennelly, J.) (ordering e-commerce store operator defendant to produce information for all products that were advertised and offered for sale on its e-commerce store, including images of the products, prices, and sales data).

Last, in its Opposition, Defendant makes unsupported claims regarding its sales, profits, and nature of its operation. [51]. However, "merely saying something is so does not make it so." *Nat'l Van Lines v. First Nat'l Van Lines, Inc.*, 2023 WL 3602803, at *2 (N.D. Ill. May 23, 2023). Given that this information is relevant and necessary to evaluate Defendant's Opposition, CAPCOM requests that this Court compel Defendant to fully respond and produce responsive documents to Interrogatory Nos. 3-5, 7-9 and RFP Nos. 3-5, 8, 10 and supplement its production relevant to RFP No. 2.

**B.     Information and Documentation Relating to Defendant's Identity, Business, Financials, and Payment Information**

Defendant failed to provide complete responses and produce responsive documents to Interrogatory Nos. 1, 2, 6 and RFP No. 1, 6, which relate to Defendant's identity, business registrations, domain names, financial accounts, and payment information. Exhibit 2 at 4, 6, 16-17, 19, Trainor Decl., ¶ 4. Specifically, Defendant failed to fully identify itself, or provide any documentation regarding its domain name, its business registration, and its identity and e-mail addresses. Moreover, Defendant failed to fully disclose all of its financial accounts and failed to provide adequate documentation related to those accounts. *See Banister v. Firestone*, 2018 WL 4224444, at *10 (N.D. Ill. Sept. 5, 2018) (granting motion to compel discovery concerning

11

financial accounts because the "information about the accounts is directly relevant…[the plaintiff] is entitled to information about these accounts."). Interrogatory No. 6 requested Defendant "[i]dentify any Financial Accounts which receive payments or hold assets for You…" Exhibit 1 at 3, Trainor Decl., ¶ 4. In response, Defendant only identified "PayPal@eechic.com" as its financial account. Exhibit 2 at 6, Trainor Decl., ¶ 4. This response is deficient because it conflicts with the limited discovery provided by PayPal to CAPCOM, which identified Defendant's Financial Accounts '1630570605488149625 and '1443426835958058207, associated with the e-mail addresses paypal@eechic.com and paypal@wehobi.com, respectively. Relatedly, RFP No. 6 requested Defendant to produce "[d]ocuments, electronically stored information, and things sufficient to show the current balance for any Financial Account in response to Interrogatory No. 6…" Exhibit 1 at 20, Trainor Decl., ¶ 4. Defendant responded by only producing a single screenshot of its PayPal account home screen displaying two balances. Exhibit 3 at 4, Trainor Decl., ¶ 4. However, this screenshot is deficient on its face, given it is cropped, blurry, and it does not display a URL or date of the screenshot was taken. Further, the screenshot fails to link the purported balances to the value of frozen assets Defendant claims. Instead, the screenshot raises additional questions, including why Defendant failed to account for more than eighteen additional accounts that appear below its purported balances. Thus, CAPCOM requests the Court compel Defendant to provide complete responses to Interrogatory Nos. 1, 2, 6 and produce all responsive documents to RFP Nos. 1, 6, as the requested information is relevant and necessary for CAPCOM to properly respond to Defendant's Opposition.

## CONCLUSION

For the foregoing reasons, CAPCOM respectfully requests the Court to compel Defendant to fully respond and supplement its production to CAPCOM's Discovery Requests. CAPCOM

further requests that the briefing schedule in Minute Entry [59] be stayed until the outstanding discovery has been completed since receiving full response to CAPCOM's Discovery Requests is essential for CAPCOM to respond to Defendant's Opposition.

Dated this 3rd day of November 2025.                    Respectfully submitted,


/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Capcom Co., Ltd.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 3rd day of November 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

                /s/ Martin F. Trainor
                Martin F. Trainor
                Sydney Fenton
                Alexander Whang
                TME Law, P.C.
                10 S. Riverside Plaza
                Suite 875
                Chicago, Illinois 60606
                708.475.1127
                martin@tme-law.com
                sydney@tme-law.com
                alexander@tme-law.com

                *Counsel for Plaintiff Capcom Co., Ltd.*